

**HODGES WALSH & BURKE, LLP**

ATTORNEYS AT LAW
55 CHURCH STREET, SUITE 211
WHITE PLAINS, NEW YORK 10601

(914) 385-6000
FAX (914) 385-6060
www.hwb-lawfirm.com

Michael K. Burke, Esq.
Direct E-Mail:  mburke@hwb-lawfirm.com

February 28, 2023

Honorable Cathy Seibel                    *by ECF*
United States District Court Judge
United States District Court
300 Quarropas St.
White Plains, New York 10601

Re: *United States v. Jordan Woodbine* 21 CR 293 (CS)

Dear Judge Seibel:

I am submitting this letter in connection with Jordan Woodbine's sentencing which is scheduled before your Honor on March 10, 2023. We agree with Probation Department's recommendation that a downward variance from the guidelines is warranted. But we urge, for reasons set forth below, that the court downwardly vary and sentence Jordan to 24 months followed by three years of supervised release as a sufficient but not greater than necessary sentence.

Attached for the Court's consideration at sentencing are a number of character letters. These letters are each compelling. They come from friends and family members who are all

accomplished in their fields and all who remain supportive of Jordan. None of the letters attempt in any way to try and minimize Jordan's behavior. All of the letters acknowledge the shocking nature of Jordan's conduct and explain how it is does not align with the young man who they know well and love and respect. These letters are from:

1. Keron Woodbine (Jordan's mother)

2. Mark Woodbine (Jordan's father)

3. Jayson Woodbine (Jordan's brother)

4. Christopher Woodbine (Jordan's uncle)

5. Ms. Pansy Hyatt (Jordan's Great Aunt)

6. Mr. Wanye Randall (Jordan's uncle)

7. Ayobami Adebayo (family friend)

8. Brian McGuirk (family friend)

9. Dr. Liza Ortiz (family friend)

10. Failliere Blain II (friend)

11. Ms. Kenya Edmondson (family friend)


The guidelines are now just one factor among several that sentencing courts are required to consider in imposing a sentence that is "sufficient but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2). In determining whether a sentence should be consecutive or concurrent the Court also analyzes the 3553(a) factors. *See*, 18 U.S.C. § 3584(b). The result is that district courts must now impose a sentence that is "sufficient but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2), after considering:

(1)     the nature and circumstances of the offense and the history
        and characteristics of the defendant [§ 3553(a)(1)];

(2)     the kinds of sentences available [§ 3553(a)(3)];

(3)     the guidelines and policy statements issued by the
        Sentencing Commission, including the (now non-mandatory)
        Guideline range [§ 3553(a)(4) & (a)(5)];

(4)     the need to avoid unwarranted sentencing disparity among
        defendants with similar records that have been found guilty
        of similar conduct [§ 3553(a)(6)]; and

(5)     the need to provide restitution to any victim of the offense
        [§ 3553(a)(7)].

Section 3553(a) is referred to in *Booker* and most post-*Booker* case law as containing various "factors" – one of which is the guidelines – that must be considered in determining a sentence. This is a potentially misleading oversimplification. Section 3553(a) is comprised of two distinct parts:  the so-called "sentencing mandate" contained in the prefatory clause of Section 3553(a) and the "factors" to be considered in fulfilling that mandate. Because the sentencing mandate contains a limiting consideration the sentencing mandate is an overriding principle that limits the sentence a court may impose.

In *United States v. Crosby*, 397 F.3d 102 (2d Cir. 2005) the Second Circuit said that " . . . the excision of the mandatory aspect of the Guidelines does not mean that the Guidelines have

been discarded . . . (S)entencing judges remain under . . . the continuing duty to 'consider' them, along with the other factors listed in Section 3553(a)." *Id*. at 111. However, the weight to be given to the guidelines should be no greater than any other 3553(a) factor. And although Court's are often heard to say that the guidelines are the starting point, they need not be when all other factors are to be given equal weight. It is "more consonant with the day-to-day role of district judges in imposing sentences and the episodic role of appellate judges in reviewing sentences . . . to permit the concept of 'consideration' in the context of the applicable Guideline range to evolve . . . " *Id*. at 113. The *Crosby* court did suggest an approach to a consideration of the guidelines, noting that "a sentencing judge will normally have to determine the applicable Guidelines range." *Id*. at 111. The Court's use of the qualifying adverb "normally" is important. The Court went on to say:

> In one circumstance, however, precise calculation of the applicable Guidelines range may not be necessary. Now that the duty to apply the applicable Guidelines range is not mandatory, situations may arise where either of two Guidelines ranges, whether or not adjacent, is applicable, but the sentencing judge, having complied with Section 3553(a), makes a decision to impose a non-Guidelines sentence, regardless of which of the two ranges applies. This leeway should be useful to sentencing judges in some cases to avoid the need to resolve all of the factual issues necessary to make precise determinations of some complicated matters. *Id*. at 112.

As noted above § 3553(a) specifically mandates that the Court impose a sentence "sufficient but not greater than necessary." It is respectfully submitted that a sentence of 24 months for Mr. Woodbine would be consistent with the 3553(a) mandate and all of the 3553(a) factors. Such a sentence would also be sufficient for a young man who's displayed aberrant behavior for someone who has otherwise lived a law-abiding life.

4

a. **3553(a)(1) Nature of the Offense and Characteristics of the Defendant.**

When analyzing the characteristics of a defendant, one must read 3553(a)(1) in conjunction with 18 U.S.C. § 3661 which provides that "no limitation shall be placed on the information concerning the background character and conduct of [the defendant] which a court may receive and consider for the purpose of imposing an appropriate sentence." Thus, the court can consider a variety of factors regarding the defendant's background and character such as: his age, his mental and emotional maturity level, educational or vocational skills, drug and alcohol abuse.

In considering those factors to the case, Jordan Woodbine was 20 years old when he committed the offense conduct and was abusing marihuana on a daily basis in an attempt to cope with the death of a close family member. During the time of this offense, Jordan struggled with the loss of his grandmother with whom he shared a very close relationship. He lost his way and was mad at the world because of her passing. Unfortunately, in an attempt to deal with his struggle and grief, he began abusing marihuana on a daily basis. Also as is mentioned in his mother's and father's letters, during the pandemic his college went fully remote and he struggled adjust to on-line course to his withdraw from college. His parents always provided for him and his brother. However, they were far from pleased with Jordan's behavior smoking marihuana. His marihuana abuse finally led to his parents kicking him out of their home.

Left to his own devices, Jordan began smoking marihuana even more and also began selling marihuana to support his daily habit. On February 28, 2021, his marihuana supplier, Wayne Hicks, who was located in Westchester asked Jordan to deliver marihuana to a buyer in Spring Valley.(PSR ¶15-16) The buyer is identified in the presentence report as Victim 1. When he arrived at the location, Victim 1 and several others men got into Jordan's car. Victim 1 put a gun to

Jordan's head and robbed him of the marihuana, money and his backpack. The backpack had been a birthday gift from his mother. Jordan reported to Wayne Hicks that he had been robbed by Victim 1 and his associates of the marihuana, money and his backpack. Wayne Hicks sent Jordan a photo of Victim 1 and Jordan confirmed that was the person who robbed him at gunpoint. Jordan wanted to get his backpack returned and he was ultimately directed by Wayne Hicks to an address in New City. When he arrived in New City, Dwayne Hicks, Tnaiya Williams, Brian Thomas and another individual were in the midst of beating Victim 1 in a car that was parked in front of the house. The assault of Victim 1 with baseball bats had begun in the rear of the house and had ensued and continued for some time prior to Jordan's arrival.

Jordan had never met Dwayne Hicks, Tnaiya Williams, Brian Thomas or the other individual prior to that night when he was told where to go by Wayne Hicks. Unbeknown to Jordan Victim 1, the man who had robbed Jordan at gunpoint was also friends with Dwayne Hicks, Wayne's brother. Dwayne Hicks, Brian Thomas, Tnaiya Williams and the other individual were the individuals brutally beating Victim 1 with baseball bats, a belt and a knife. During the course of the savage beating, Tnaiya Williams did not rubbing alcohol that Dwanye Hicks poured over Victim 1 wounds. Jordan did not use any weapons against Victim 1 nor did he douse him with rubbing alcohol. However, during the course of the beating Jordan did take a swing at Victim 1. The savage beating was being videotaped by one of the other assailants. During the course of the assault, Tnaiya Williams brought out Jordan's backpack that had been recovered from Victim 1 and returned it to Jordan. Jordan then left soon thereafter. According to the presentence report, two of the assailants left the location with Victim 1's car and Victim 1 was able to flee on foot to a neighbor's home.

6

Young men just out of their teens like Jordan, are more vulnerable to negative influences and peer pressure. Here, Jordan Woodbine was 20 years old at the time of the offense and was immature and naïve and had yet to fully move beyond an adolescent mindset. Had he not wanted to get back his backpack that was robbed from him at gunpoint, he likely would have never gone to the New City location.

Clearly adolescents are more susceptible to the dangers and negative influences, however, because of the nature of the maturing process, adolescents are more amenable to rehabilitation. This is in no way an attempt to minimize Jordan's behavior but merely an attempt to put in context his role and what led up to him arriving in New City where the vicious beating was unfolding.

All of the purposes of sentencing are met with a sentence of 24 month coupled with outpatient counseling. First, Jordan is a first-time offender and he does not pose any arguably threat to the public. Second, outpatient counseling with the probation department's oversight will provide the most effective manner in treating Mr. Woodbine while further permitting him to complete his college studies and pursue a career. A 24-month sentence with 3 years of supervised release would also be consistent with the overarching principle of imposing a sentence that is sufficient but not one greater than necessary.

Adding a twenty-two year-old first time offender who does not pose a threat to the community to a prison population for a prolonged period of time a prison population that has increased by 51% since 1995[1] and is the largest prison population of any other country in the world, we urge, would not only be unnecessary, it would be unjust.

---

[1] November 2, 2005 Wall Street Journal

It is clearly acknowledged and recognized that his involvement in marihuana dealing and participating in the robbery of one of the individuals who robbed him at gun point was serious. However, Jordan's emotional age is relevant because when the offenses were committed, Jordan was just out of his teen years; he was regularly abusing marihuana and earlier that night had been a victim of a gun point robbery that led to Dwayne and Wayne Hicks luring Victim 1 to a location in Rockland County to brutally retaliate. Jordan's youth and immaturity are important considerations because he is more amenable to treatment and rehabilitation than are older offenders whose patterns of preference and behavior are well-settled. Because Jordan is still evolving through the normal process of maturation it will be easier for him to change. Jordan's age gives rise to the possibility that, with treatment, he will grow out of the aberrant behavior which has brought him before the Court.

Related to age and maturity is the issue of vulnerability while in prison. *United States v. Gonzalez*, 945 F2d 525 (2nd Cir. 1991) (upholding 66 month downward departure for a 19 year old defendant who appeared to be 14 or 15). In our review, Jordan's boyish appearance, coupled with his emotional immaturity would support a finding that older inmates would be especially likely to victimize him, further evidencing that he does not belong in prison. Owing to Jordan's aberrant behavior, his youthful indiscretions and certainly his emotional immaturity are relevant to an application for a variance to a 24-month sentence.

**b. The kinds of sentences available (3553(a)(3)) and the need to avoid unwarranted sentencing disparity (3553(a)(6))**

The need to avoid unwarranted sentencing disparities between defendants in the same prosecution is an important factor to consider. Here, co-defendant Tnaiya Willaims was far more

involved in the brutal beating and assault. She beat Victim 1 with a belt and fetched the rubbing alcohol so it could be doused on the already injured victim to further inflict pain. Tnaiya Williams was sentenced to 44 months, 19 months below the low end of her guideline range of 63 to 71 months. Jordan was clearly less culpable in the beating and did not use any weapons like Ms. Williams did. Jordan had just been a victim of a violent gunpoint robbery by Victim 1. Applying the same 19 level of variance that was afforded to a similarly situated Tnaiya Williams who was charged with the same conduct as Jordan, would result in a sentence of 22 months for Jordan.

We agree with probation that a variance to a non-guideline is warranted, however, we are asking that Court go even further than probation is recommending and sentence Jordan to a sentence  24 months followed by three years supervised release.

**c.      Afford Adequate Deterrence and Protect the Public from Further Crimes.**

It is respectfully submitted that a lengthy sentence or more than 24 months is not necessary to serve as a deterrent to protect the public from future crime of Jordan Woodbine. The deterrent message has been sent and received.

As to general deterrence, the empirical evidence is unanimous. There is no relationship between sentence length and general deterrence, regardless of the type of crime. *See* Andrew von Hirsch et al, *Criminal Deterrence and Sentence Severity:An Analysis of Recent Research* (1999) (concluding that "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance," and that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences generally is capable of enhancing deterrent effects"). The Sentencing Commission has found that "[t]here is no correlation between recidivism and guidelines' offense level. . . .  While surprising at first glance, this finding should be expected.

The guidelines' offense level is not intended or designed to predict recidivism." U.S. Sent'g Comm'n, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, at 15 (2004).

The Commission's research also demonstrates that employment, education, and family ties and responsibilities all predict reduced recidivism. *See* U.S. Sent'g Comm'n, *Measuring Recidivism* at 12-13 & Ex. 10; U.S. Sent'g Comm'n, *Recidivism and the "First Offender"* 8 (2004).

In short, Mr. Woodbine's age, family support, education and gainful employment in the past, as well as his willingness to engage in future therapy, strongly support the conclusion that he is unlikely to re-offend.

### d. To Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner.

The importance of counseling and therapy clearly cannot be understated in this case. As Jordan's Mom noted in her letter, in hindsight, perhaps grief counseling for Jordan would have helped him not to stray. Imposition of intensive treatment and therapy will promote good behavior and protect the public which militates for the sentence requested. Beyond simply being equitable, this approach best suits Mr. Woodbine's needs, *see* 18 U.S.C. § 3553(a)(2)(D) *see also*, *United States v. Bidon*, 2006 WL 3025876, 5 (S.D.N.Y. 006) (holding that rehabilitation also serves as a goal of punishment pursuant to § 3553(a)(2)(D), which allows the Court to consider whether the sentence imposed will "provide the defendant with needed . . . medical care, or other corrective treatment in the most effective manner") (citing cases).

**e. Imprisonment is not an appropriate place for treatment and rehabilitation.**

According to 18 USC § 3582, in determining whether to impose a term of imprisonment, the Court will consider factors set forth in 18 USC § 3553(a), "recognizing that <u>imprisonment is not an appropriate means of promoting correction and rehabilitation</u>."

"The [Sentencing] Commission shall insure that the guidelines reflect the inappropriateness of imposing a sentence to a term of imprisonment for the purpose of rehabilitating the defendant or providing the defendant with needed education or vocational training, medical care, or other correctional treatment." See 28 USC § 994k.

There is substantial evidence that by reducing prospects of future employment, weakening family ties, and exposing less serious offenders to more serious offenders, time in prison leads to increased recidivism.[2]

The Court should not look to the Bureau of Prisons as a means of rehabilitation for Jordan Woodbine. Mr. Woodbine should be permitted to seek the private treatment that he needs and his family is prepared to provide, in order to address his substance abuse and potential unaddressed mental health issues related to the loss of his grandmother.

## CONCLUSION

We respectfully request that the Court sentence Jordan to a sentence 24 months and three years of supervised release.

---

2 See Lynne M. Vieraitis, Tomaslav V. Kovandzic, Thomas B. Marvel, "The Criminogenic Effects of Imprisonment: Evidence from State Panel Date 1974-2002." 6 Criminology & Public Policy 589 (2007) at http://www3.intersicence.wiley.com/journal/117993456/abstract.

Very truly yours,

MICHAEL K. BURKE

Cc:    Assistant United States Attorney Derek Wikstrom

December 22, 2022

Dear Judge Seibel,

I hope my letter finds you well.

My name is Keron Randall-Woodbine and I have the honor of being Jordan's mother.  By profession, I am the Director of Client Accounts at a prominent law firm in Midtown, Manhattan. Additionally, I sit on various boards at my church, which I've been a member of for over forty years.  As a long standing member of my church, I've spent most of my life serving others and giving back to my community, and by default, my family has done the same; it's a part of our lifestyle.

I strongly believe that a young man may emulate what his father does, but his mother is responsible for his heart.  As Jordan's mom, I was responsible for molding and developing the core of his being - his heart; instilling integrity and good character traits.  At heart, I know that Jordan is a good person with good values; he's smart, witty, kind, loving, helpful, considerate, emotional, compassionate, respectful and humble.  I've spent the past several months existing in a space of disbelief; grappling with trying to figure out what went wrong…where did my baby boy lose his way.  Unfortunately, Jordan witnessed the demise of his grandmother (my mother) whom he adored.  Her passing on February 23, 2020 turned our world upside down.  Shortly thereafter, we were affected by the Covid-19 Pandemic, quarantined in our home and unable to be with our extended family and friends in person.  Jordan had to abruptly shift to online classes. As I worked from home, I observed Jordan struggling with his classes; he would become so overwhelmed and frustrated that he would just sit there and cry because, "there is no one available for me to ask questions."  As his mom, it broke my heart to see that and I felt helpless, as I was also grieving the loss of my mom, while trying to keep my head above water with my very demanding job.  Needless to say, 2020 was an extremely troubling year in our lives.  I say all of this not to mitigate Jordan's actions, but to try and wrap my head around the whole situation…how did we end up here. Prior to 2022, Jordan lived a normal life where he attended Rockland Community College (with plans to continue his education at a senior SUNY College), while he worked part-time at Panera Bread for four years.

On July 12, 2022 Federal Agents entered our home at the crack of dawn to arrest my son; nowhere in my wildest dreams would I ever have expected such a terrible thing to happen to either of my two sons. My husband and I are decent, well respected, hardworking, law abiding citizens; our sons were raised as well-rounded young men, with good values and morals.  Since this horrible traumatic day, that will forever be etched in my mind, I've been waiting for someone to awaken me from what must be my worst nightmare.  Our extended family and friends have all been very supportive, because they know first hand the kind of family we are.  I'm a believer in God and I know that "This Too Shall Pass."

I have spoken with Jordan every day since he's been incarcerated, and have sent him books (word puzzles, memoirs, Men's Health magazines and CDL Study Guide) that he has asked for

or that I think are appropriate for him to read in his situation.  It is important to me that Jordan keeps his mind occupied in a constructive way; and that he remains hopeful of his future. He is a very young man, who has his entire life ahead of him.  He's made a grave mistake, for which there are consequences, but I don't think that should define him for the rest of his life.  Jordan has apologized many times for disappointing his family and is remorseful and embarrassed for his actions, which are incongruent to the way he was brought up.  I have observed a new level of maturity in his thought process and demeanor, he has rekindled his relationship with God; he prays and meditates daily.  Jordan has also been journaling, as I've suggested to him; it is a way for him to express his thoughts and feelings about his current situation and ponder where he lost his way. When I visited with him, he brought his book to show me some of the things he's been writing. I am pleased to observe this shift in Jordan, as it makes me hopeful for his future and our future as a family.  I know that my son's rehabilitation has already begun and I believe from the bottom of my shattered heart that he will one day make me proud again.

I've spent the past few months praying that God will shower Jordan with an abundant measure of His Grace and Mercy.  Judge Seibel, I've prayed that God will speak to your heart and use you as the vessel to grant my son the chance to redeem himself, to the extent the law allows, to correct his mistake and become the man he was raised to be.  I know Jordan's potential and I also know that God has a divine purpose for his life.  I'm confident that my son will be a better young man on the other side of this; he will put this mistake behind him and restore his character.  I love my son with every fiber of my being and look forward to having him back home, where he belongs, sooner rather than later.


Respectfully,

Keron Randall-Woodbine

Mark Woodbine
6 Fox Hill Road
Chestnut Ridge, NY 10977
January 3rd, 2023

United States District Court
Federal Building and United States Courthouse
300 Quarropas Street
White Plains, NY 10601-4150

Dear Honorable Judge Cathy Seibel,

My name is Mark Woodbine and I'm Jordan's father. I am currently employed at The State University of New York, Rockland Community College as the Assistant Director of Student Accounts for the past 13 years. Prior to Rockland Community College I worked at City University of New York, Bronx Community College for 15 years; a total of 28+ years in the higher education environment.

Jordan is my second of two sons; he has been an active child growing up in a stable home, with two hard working parents and his older brother, who is four years his senior. As immigrants from Jamaica, West Indies, my wife and I instill in our children that education and hard work is the key to a successful life. Our children were always with us and we devoted everything we had into raising them to be honorable and respectful young men.

Jordan's childhood was one that involved sports, such as soccer, baseball, basketball and football; however, as a student athlete he knew that school was his top priority. Jordan was very respectful to his teachers, classmates, coaches and teammates. For many years, I coached soccer, baseball and basketball; both of my sons were always on the teams that I coached. I was a very hands-on father, with both of my children's extracurricular activities, as soon as they were at the appropriate age to participate in youth sports. Jordan was always one of the top players in each of the leagues that he participated in. I coached him all the way up to Junior High school, where he tried out and made his Junior High School basketball team. Jordan played a vital role in the team's success. To this day, as I go about my business in the community, I run into students and parents alike, who still refer to me as "Coach Woodbine".

Instead of going to our local High School (which was experiencing budget cuts to most of the sports program), my wife and I decided to enroll Jordan into Paramus Catholic High School in Paramus, N.J. Jordan tried out for the basketball team during his freshman year and to no surprise he made the team; he played basketball during his freshman, sophomore and junior years. During his junior year, Jordan was motivated to work part-time after the basketball season, to have his own spending money. Although we were always fortunate to buy him whatever he desired, he wanted to earn his own money to make those purchases himself and not rely on his parents. He worked at Panera Bread during his junior and senior years of high school; he was always punctual and showed up as scheduled, without his parents prompting him. He would also take on additional hours on his days off, when he was called in because of the company being short staffed. He was courteous and respectful to customers, supervisors and colleagues. Jordan graduated High School in June 2018 and continued to work at Panera Bread. As a result of his hard work and dedication to the company, he was promoted to Associate Trainer.

Jordan enrolled at Rockland Community Collect in the fall of 2018, where he pursued an Associate Degree in Business; while he continued working. By the end of his third semester (Dec 2019), it became evident that juggling school and work was becoming too much for him to handle, so he resigned from Panera Bread. The start of the Spring 2020 semester was going well without work as an interference, when his grandmother died and the Covid-19 Pandemic disrupted in person classes. The College had to abruptly switch to remote learning; this transition was difficult for Jordan. He did not want to go back for remote learning for the Fall 2020 semester but was encouraged by his brother to keep pushing. That semester was really tough for him, so he decided to take off the Spring 2021 semester, until the College got back to some in person classes in the Fall 2021 semester. As we know it, most of the country was shut down and

many businesses closed. With nothing much to do Jordan spent most of his time with his two best friends who were home from college, due to the pandemic. By the Fall 2021 semester, both of his friends went back to college; one to University Buffalo the other to Johnson & Wales in Florida. Jordan was now at home without the support of his friends and not attending classes. With no school and no work, I assume that Jordan met people who influenced him negatively. As the saying goes, "the devil finds work for idle hands." Although we are not their only influence in life we hope that our children make good choices in their journey and learn from their mistakes and the mistakes made by others.

Jordan was on a career path of getting his Associate Degree, with one semester left and had plans to transfer to a SUNY Senior College. My son got off track and made some poor decisions, for which there are consequences. Jordan knows the difference between right and wrong but young adults often make poor decisions, without fully realizing the consequences of their actions. Their brain is not fully developed during their late teens and early twenties as they grow into adulthood; during this transitional period, they're susceptible to making poor decisions at times. Hopefully, this time of bad judgment in Jordan's short life will not dictate or hinder his development. He has plans to get back on track and pursue a career in business management/entrepreneurship in the Carrier Industry. Jordan is blessed to have a very supportive group of family and friends; with our love and support, Jordan can become whatever he desires. I ask that you find it fit, within the confines of the law, to give my son the chance to carry on with his goals/dreams that have been temporarily put on hold until he gets the next opportunity to resume his normal life. After all these months, we are still trying to wrap our heads around what has transpired, because Jordan was not raised in the streets. He has manners and respect to those who have been a part of his life that includes his parents, aunts, uncles, friends & acquaintances.

Sincerely,

*Mark Woodbine*

Mark Woodbine

December 23, 2022

Dear Judge Seibel,

I hope this letter finds you well. My name is Jayson Woodbine, I am 26 years old and I am Jordan Woodbine's older brother. In 2018, I graduated from Stony Brook University in Long Island, NY with a BE in Chemical and Molecular Engineering and currently work as a Research and Development Scientist developing household consumer goods.  These past few months have been extremely difficult for me and my family. Leaning on faith, I have been doing my best to continue to go to work and carry out my typical routine while being the strong support for my family.  I am writing to you regarding Jordan, his current circumstance, and how I believe he has potential to turn this difficult situation into a positive and life changing one.

As you can imagine, growing up as brothers can have its ups and downs.  Nonetheless, Jordan and I have been blessed all of our lives, thanks to both of our parents who have raised us with great morals and values.  Our parents have been great role models, proving to us that hard working, law abiding citizens are rewarded with success.  As mentioned, I have lived with and have been actively present in my brother's entire life, along with my parents; even until this day. There are so many memories that my brother and I share - from playing sports competitively and having our father as the coach for every sport, to going on vacations as a family, we have always been together.

Jordan has shown to be of service and value to his community in many ways throughout his short lived life.  As a student of Paramus Catholic High School he was required to perform hours of service.  Many times, this was supporting athletic events and other activities within our community.  My brother also held a job at Panera Bread for about 4 years in Montvale, NJ after I recommended him for the same position I held, as I went away to college.  After graduating High School, he also attended Rockland Community College (RCC) and unfortunately, with one last semester to complete his Associates Degree, the effects of the COVID-19 pandemic in addition to the death of our grandmother adversely impacted him.  We began to see Jordan become distant and easily frustrated.

To me, the most special moments that I can remember of our relationship is when I would get off of work to help him with his homework and assist him with studying for his courses.  In addition, I used to always think of him when buying food and would bring him a meal when coming home. As someone who was strong academically, I tried to not only be a great role model for Jordan but guide him and support him as much as possible, in the ways that I could.

Although there has been a short time period when Jordan steered from how we were raised, our family remained together and continued to be present within each others' lives.  Tough love from a family with high standards can also have an impact and place pressure on a young, black man growing into adulthood and finding his way.  I too grew up in the same environment and am aware of the many temptations faced daily. I have no doubt that my brother is genuinely a good person with the potential and ability to prove himself to be a valuable member of society.  I can see that his mentality and perspective on life has already changed since being incarcerated.  He

is remorseful, hopeful, and motivated to have the ability to live a purposeful life.  With the support of our family and his spiritual shift I am confident that he will redeem himself and prove to be someone we can all be proud of.  I am looking forward to what the future holds as we long to be reunited.  I will continue to act as a big brother and positive role model for Jordan, keeping him close and providing him guidance for a successful future.

Lastly, I am planning to propose to my lovely girlfriend shortly; whom Jordan also has a relationship with and cannot have anyone else but my brother be my best-man in our future wedding. I am fully aware there must be consequences for our actions however, I also believe in second chances as one mistake should not define who we are especially at a young age where things may not always be so clear. It's been a pleasure writing to you, Your Honor and pray for your highest grace. God Bless.

Sincerely,
Jayson Woodbine

Christopher Swindall-Woodbine
65 Canal Woods
Rochester, NY 14626
28 December 2022

District Judge Honorable Cathy Seibel
District Judge
Federal Building and United States Courthouse
300 Quarropas Street
White Plains, NY 10601-4150

Dear District Judge Honorable Cathy Seibel:

I'm Jordan Woodbine's uncle, Mr. Christopher Woodbine, younger brother of Mr. Mark Woodbine (Jordan's Father). I currently serve (17 yrs. Enlisted/19 yrs. Officer (Active & Reserve Duty Total 36yrs.)) in the United States Air Force Reserve as a Major at the Air Force Research Lab (AFRL) Rome, NY as the IMA Lead to the Connectivity and Dissemination (CAD) Core Technical Competency (CTC). I'm also employed (Full-Time) at the Defense Contract Management Agency (DCMA/12 yrs.) as a Program Systems Engineer. My educational background, I hold an Associate of Science degree in Criminal Justice, Bachelor of Science in Electronics Engineering (BSEE) and a Master of Business Administration/Technology Management (MBA/TM). I'm married to my wife of thirteen (13) years and have two (2) children (twin boys) age eleven (11). We participate in the boys' soccer, basketball, football team fundraising, team mom/dad, and videography of team games, and assist in coaching the team(s). My family and I are currently active members in our church (Genesee Baptist Church).

I've known Jordan practically all of his life. I didn't always live close by as I've lived in several different states (CA, TX, GA, FL, NY) but we would always talk by phone. When I would ask his parents how is he doing in school, they would always say he gets A's and B's and the teachers would comment he puts in very little effort to achieve those grades. Jordan was very bright and, his parents, thought it would be best to challenge his educational skills by transferring him to a private high school. At this private school he also excelled and attained A's and B's throughout his tenure. When I moved back to New York this is where we would see each other often in his teen years. When he visited with our family Jordan was always respectful and he was like the big brother to my kids. Always, protective, laughing, playing with his cousins, making sure they were alright. It was during these times I would talk with Jordan about his future goals in life as he was approaching graduation from high school and about to enter college. He would ask questions about certain majors and I would give him my opinion. He seemed to have a passion for music and wanted to

District Judge Honorable Cathy Seibel
28 December 2022
Page 2

become a music producer but, since he was unsure of what he wanted to do, he went to a Community College to try and figure out what he wanted to do and, in the meantime, take his core classes. During this time, he also worked for Panera Bread part-time. He seemed to be like any ordinary teenager trying to find his way. Leading up to the pandemic we took some family loses, in February 2020 we lost our aunt (Jordan's Great Aunt), two weeks later in the same month we lost his Grand Mother. These ladies played a significant part of his life, especially his Grand Mother. He seemed to be depressed at the time and probably didn't know how to cope with the situation. It was later, we found he was hanging out with some undesirables, of whom he called friends. These are not the same friends he grew up with but, friends he had just met. These so-called friends might have given him some ill-advised mentoring to which all led to what has transpired leading up to today. We tried talking to him at the time but, our advice as the saying goes "went in one ear and out the other". This is not the Jordan I know and how he was raised by his parents. Our parents (immigrants from Jamaica), Jordans Grandparents taught us to value education, work hard, don't look for handouts, and told us many sayings to keep us straight but, of course nothing beats experience in your own life. I visited with Jordan the week of July 4th, we spoke and he stated he would call me during the week, he had something to tell me, he looked worried but, we never got a chance to speak because he was arrested on July 12th.

I've always been embarrassed to speak on my own situation that occurred thirty-two (32) years ago. I was in a situation very similar to Jordan's in where I was arrested and taken to jail for six (6) days until I was able to post bail. In those six days I would look out the window down in the streets and see all the free people walking around below, and I prayed to GOD, if he could get me out of this mess, I'm in, he would not hear another peep from me again (as far as trouble is concerned). I had nothing to do with the situation but being at the wrong place at the wrong time. To make a long story short, my friends at the time pleaded guilty to lesser charges (misdemeanor(s) instead of felony) and was sent to a half-way house to serve time on the weekends. My lawyer at the time said they're offering the same deal to you and to take the deal or you're looking at seven (7) to ten (10) years if we go to trial. My reply to him was, if I did nothing wrong why would I plea to a deal, I'll take my chances with a trial if the system is supposed to work like they say it's supposed to work. My lawyer went back into the judge's chambers and told him what I said, my lawyer came back out into the hallway, looked at me and shrugged his shoulders, and stated the judge wants to speak with you. I went into the judge's chambers and he asked me some questions as to what I was currently doing, I told him I was in college in Georgia, he then asked what was my part in this situation, I told him what happened and I was just there, witnesses also corroborated my story in court. The judge said to me "I don't ever want to see you in my court again, good luck with college, get on your plane, and don't come back". My prayer was answered and you'll be hard pressed to find as much as a parking ticket on me. Maybe, God put me in this situation thirty-two (32) years ago to plead for my nephew Jordan today. Without that judge's intuition on me, I don't think I'll be the person I am today nor would I have accomplished all that I have today.

District Judge Honorable Cathy Seibel
28 December 2022
Page 3

Honorable Seibel, I stated the above in that you will have compassion and mercy on Jordan as the judge had on me. Example, when these young men come in the military and get in trouble at eighteen, nineteen, twenty, they always tell them they need to grow up because they're in the military now. I always protect and push back that they're not really grown and they're still basically kids who just left their parent's house. Jordan's issues started approximately at 20 years old, the same careless decision making I see in the military at this same age. I also made dumb decisions when I was in the military at eighteen, nineteen, twenty and there was an older gentleman who took me under his wings. I pray you would bring Jordan into your chambers and speak with him and you'll see the same kid I see. He's lived in the suburbs all of his life, never had any issues outside of the home, he's not a street person, but just a kid who got caught up in the moment. His parents have relayed messages to give to me in which he now knows of his misfortunes and would love nothing more than a second chance in life to become a productive citizen in society. It is my personal opinion; Jordan has been rehabilitated in the short time he's been incarcerated and has relayed to his parents to me that "he should have listened to us and his decision making was reckless with abandonment in how he was raised". With what he knows now, I don't think you would hear another peep out of him as long as he lives. This was an eye opening experience for him to know the repercussion and consequences of his actions. I believe we should limit his incarceration as "Time Served", and any further noise from him after, then he gets what he deserves. We have a saying in the Military and Civilian Government, we have to look at the "Total Person Concept" and not just the outlier of this particular occasion. I would like to see the lovable kid I've always known even when I last saw him in July. I believe he's learned his lesson and any long-term imprisonment might set him back years if not a lifetime. Honorable Seibel, I'm a product of what that second chance on life can be, if given an opportunity. With this I close, Honorable Seibel, I'm begging and praying to give this kid (Jordan) a second chance at life.

Sincerely,

Christopher Swindall-Woodbine

Christopher Swindall, Major, USAF
IMA Lead to the Connectivity and Dissemination (CAD)
Core Technical Competency (CTC)
AFRL/RIT
Rome, NY 13441

Christopher Swindall
Program Systems Engineer
DCMA Syracuse/EUSEA

December 25, 2022

Dear Judge Cathy Seibel,

My name is Pansy Hyatt and I am Jordan's grand aunt. Jordan's mother, Keron Randall-Woodbine is my niece. Jordan's grandmother (deceased) is my older sister. I am currently retired; previously I worked for NYC Metropolitan Transportation Authority (MTA) for over 20 years.

I have known Jordan for his entire life and was part of the village that helped to raise him. Jordan and his brother are the same age range of my grandchildren and we all live within 30 minutes of each other. We are a close knit family, so I've spent a lot of time with Jordan and his brother since they were born. I have never experienced Jordan to be anything but kind, loving and respectful. It was a pleasure to observe how my niece and her husband raised their children; they poured everything they had into their two sons' development. Jordan has had a solid upbringing and was given the tools that he needed to succeed in life.

Jordan's parents went on vacation approximately five years ago and left him in my care for one week.  It was a pleasure having Jordan stay with us, and he and his cousins enjoyed spending the entire week together. Jordan attended Paramus Catholic High School and I had the pleasure of attending his graduation ceremony. After graduation, he attended Rockland Community College, where his father works. While attending school, Jordan also worked part-time at Panera Bread for four years.

My sister (Jordan's grandmother) passed away in February of 2020 and losing her has affected the entire family. Jordan was close with his grandmother and I am convinced that her passing has adversely affected him. I can recall my sister telling me on many occasions how loving and attentive Jordan was to her. While she was in hospice care, Jordan would visit her and sit by her bedside for hours; it broke him to see his grandmother suffering. Shortly after her passing, we were all affected by the Covid 19 Pandemic.  I have spent the past few months thinking about where Jordan lost his way, and although we will never truly know, I have no doubt that losing his grandmother played a big part. He obviously met people who negatively influenced him, while he was at a low point in his young life. Jordan has made some poor decisions, and I understand that there are consequences for his actions. Since being incarcerated, I have had the opportunity to speak with Jordan a couple of times and I think that he is truly remorseful and ashamed of his actions. We are a family with high standards and Jordan knows his actions within the past two years have disappointed us.  I am aware that this generation is unfortunately growing up in a much different world than I did; they face temptations that did not even exist in my era and they are not fully aware of the consequences of their actions. My heart breaks for this generation as a whole.

Judge Seibel, I ask that you show leniency in Jordan's sentencing, as much as is allowed within the confines of the law. Jordan has a strong support system and we are all here to help him redeem himself and move forward from his mistakes.

Sincerely,
Pansy Hyatt

December 28, 2022

Good day Judge Seibel,

My name is Wayne Randall and I am Jordan's uncle. Jordan's mother, Keron Randall-Woodbine is my sister.  I've been a Sales Representative in the Food Service Industry for over 25 years.

I'm pleased to say that I was very much involved with raising Jordan.  He has had an impeccable upbringing, with good values, stemming from his parental background.  I am proud of my sister and her husband for the investment they've made in both of their sons' educational and social development. Jordan is very emotional and displays good manners.  I was the primary caregiver for my mother, as I lived downstairs from her.  As her health declined I began to see a more mature side of Jordan; he was caring and attentive.  We lost my mom February 2020, this has had quite an impact on the family but specifically Jordan; this was the first time he experienced the death of someone near and dear to him.  He had a very close relationship with her and was always super attentive to his grandma. While she was sick and in hospice care, he would call in between his classes to check on her. Prior to her becoming a hospice patient, he would drive her to her doctor's appointments, when his schedule permitted.  He always visited with her on the weekends; he would sit by her bed for hours, caressing her, as he attempted to engage her in conversation. Jordan was the apple of her eyes, since he spoiled her and gave her a lot of attention and vice versa.

Jordan is very smart and technologically savvy; I like to refer to him as my "personal IT assistant". I would always feel like a nuisance when he came over and I would have an issue with my computer, phone, smart watch, etc.  Jordan was always patient as he explained little tips and tricks and made time to help me before leaving.  I have always had a relationship with Jordan and his brother since they were born as they visited often. I attended all of his graduations and some of his sporting events and watched him develop into a fine young man. Like other family members, I would never have expected Jordan to get caught up on the wrong side of the law; he has always been more reserved and not overly outgoing.  Somewhere during the past two years, he obviously met people who got in his head and steered him down the wrong path. To my knowledge, he has a couple of friends and that's it; not one that I would describe as a social butterfly. I am actually quite baffled as to how he wound up in this situation. However, with the upbringing he has had I am sure he has the potential to correct his poor judgment.  Some people are troubled and have a history of bad behavior and prove to be harmful to society; I know this is not the case with Jordan.  I have only seen him to be loving and helpful.  I think this situation is one that will steer him away from any trouble for good, given that he is now fully aware of the consequences and has been around those who live a positive lifestyle.

I don't claim to have the answers but I think as a society, we owe it to our young adults who make an error in judgment to give them a second chance to get it right. Obviously, this does not apply to everyone however, I think that Jordan got caught up with the wrong crowd and can

correct his mistake. I can assure you that as a family we will do all we can to help him find employment and complete school.  Your Honor, I ask that you show Jordan leniency to the extent you're able.


Sincerely,
Wayne Randall

Ayobami Adebayo

1680 Pelham Parkway S

Bronx, NY, 10461

12/28/2022

Re: United States v. Woodbine

To: The Honorable Judge Cathy Seibel

My name is Ayobami Adebayo and I'm a third year medical student at the Albert Einstein College of Medicine pursuing an MD degree. I've had the pleasure of growing up closely with Jordan for over fifteen years as we navigated the same school system. His older brother, Jayson, is someone who I consider one of my best friends until date. Our families have always been close so I've also had the pleasure of watching Jordan blossom into the man he is today.

Since I've known him, Jordan has been a close friend and someone I consider a younger brother. As someone who has always known him to be extremely honorable and intelligent, I was both disturbed and surprised to hear of his most recent situation. I'm conscious of the severity of the situation and am praying for the court's mercy.

Jordan and the Woodbine family have always had a good reputation in the neighborhood and the community. Mark Woodbine, Jordans father, was my basketball coach for the longest period of my childhood. I also have a little brother who is closer in age to Jordan. Because of this, all of us were always together on a daily basis at each others homes for dinners in addition to the time we spent traveling across the country together for our basketball games. Throughout all the time I've spent with Jordan, he has always shown outstanding integrity and poise. Jordan served as a source of love and friendship for my family and was present at every important milestone celebrated. Over the course of our relationship, he has shown to be an excellent person and friend.

In addition to our relationship, he is generally considered a good citizen in the surrounding community. However, growing up as an African American male in our community comes with its challenges and one can be easily influenced to follow the crowd and make bad decisions, especially when you're young. As many of Jordan's positive role models, including myself and his older brother, left for college; he lacked nearby positive influence and guidance. Unfortunately, he had made some poor choices, which led to the conclusion of this case; even though I was taken aback when I learned of the inappropriate behavior, it should not be a shock that he is willing to take accountability for his actions. I do not doubt that as time goes on, he will develop into a more

outstanding person. Jordan has shown sincere regret for his actions and confidence in his abilities to pay his responsibility to society.

I sincerely hope the court will take into account the information included in this letter while selecting the right punishment. Despite the circumstances surrounding this matter, I believe that Jordan is a respectable person, an asset to our society, and a good fellow citizen.

Sincerely,

*Ayobami Adebayo*

Ayobami Adebayo

Albert Einstein College of Medicine

M.D. Candidate, '24

President, Student National Medical Association - Einstein Chapter

January 3rd, 2023

Brian McGuirk
7 Scarlett Court #20
New City, NY 10956

United States District Court
Federal Building and United States Courthouse
300 Quarropas Street
White Plains, NY 10601-4150

Dear Honorable Judge Cathy Seibel,

My name is Brian McGuirk and I am a friend of the Woodbine family for nearly 4 decades. I am employed at the State University of New York at Rockland Community College as the Director of Student Accounts for the past 20 years.

I am writing to you today regarding the sentencing of Jordan Woodbine. I have known Jordan since the day he was born. Jordan and my son Liam were born only a few months apart and over the years I have watched them both grow up together.

Jordan was a very talented athlete and a team leader across many sports, so I, like many around me are having difficulty with the situation he is currently facing. I can tell you from personal experience he was always a very kind and respectful young man willing to go out of his way to help others.

We have many events here at SUNY Rockland Community College. As part of his community service duty for Paramus Catholic High School, Jordan would participate in many of the Cultural Diversity events we hold here at the College for all four years of high school. From setting up tables at the start of the event or helping with cleanup at the end of the event there was never any issues or complaints. In fact, he helped recruit some of his classmates to participate and help usher parents to their seats in our theatre.

Jordan would also assist in setting up for sporting events in the College's Fieldhouse. Jordan would set up tables for basketball games and work the scorer's table as well as set up the soccer nets for the indoor tournaments and any other task requested from the Athletic Director.

While attending Rockland Community College I had many discussions with Jordan regarding school and you could see he was trying to find his way. Like so many young people that attend Rockland Community College, Jordan had not really found his passion but eventually he settled on a pursuing a degree in business and then the pandemic hit the Country.

What we learned as an institution was online education is not for everyone. I believe this was an unfortunate turning point for Jordan. He decided to take off the Fall 2021 semester until we returned to in person classes and unfortunately fell in with the wrong crowd.

I truly believe you have a good young man that made a poor decision and has had time to reflect and take ownership of that mistake. I ask you to consider as much leniency as possible in your sentencing. We are all working together to make sure upon Jordan's release that both employment and business opportunities are available to him.

Sincerely,

Brian McGuirk

# DR. LIZA ORTIZ

28 Soluri Lane, Tomkins Cove, New York 10986 | 845-893-3899 | drlizaortiz@gmail.com

December 26, 2022

**Judge Cathy Seibel**
Federal Building and United States Courthouse
200 Quarropas Street
White Plains, NY 10601-4150

Dear Judge Cathy Seibel,

As an educator for 27 years, I met many scholars throughout my journey as a teacher, staff developer, and as an administrator that have varied abilities to excel. Naturally, I look at the qualities of students and their families in order to fill in the gaps that may need to be nurtured. Forgiveness and leniency are part of the education process. With every mistake there is a lesson to be learned that shapes our scholars.

When I moved to Rockland County 16 years ago, the first family I met was the Woodbines through junior league basketball. Mark Woodbine was the basketball coach. The Woodbines nurtured, mentored, and taught my son the values of being a leader and a team player while using his intelligence. Jordan Woodbine was the first young man my son met. As a mother, I looked at the qualities of Jordan and his family which would determine if I can extend trust to them. I did trust them. Jordan welcomed my son with care, love, and endearment. This was a direct link to the values I saw his father Mark Woodbine give my son.

Jordan and my son played on various teams together. If my son was feeling lost or disappointed for a mistake on the basketball court, Jordan would lift his spirit. Jordan was inclusive as a teammate. This was evident at the championship game, where Jordan could have taken the last shot, but passed the ball to my son to make the last shot. This was a game winning shot. They won. Jordan's humility and modesty kept him from savoring the victory in front of his opponents, which were his friends.

They entered different catholic high schools. My son attended St. Joseph Regional while Jordan attended Paramus Catholic, two of the biggest catholic school rivals in North Jersey. When they would play each other regardless of the score, outcome, or circumstance Jordan would always cheer for my son as if they were still on the same junior league team. His charisma always lit up the room and had my son in high spirits whenever he would feel down.

When I heard the news of Jordan, my family and I were shocked because this is not the Jordan we know and have learned to love. This sparked my interest to research books and literature that would keep his hope alive. I believe in the power of words and the impact that literature can make to inspire and change lives. For this reason, books such as: Balance: Tipping the Scales, Leveraging Change, and Having It All: Positioning Yourself to Do All Things Well by Toure Roberts, Miseducated A memoir by Brandon P. Fleming, Higher is Waiting by Tyler Perry, just to name a few were shipped to inspire and give hope to Jordan.

Honorable Cathy Seibel, I ask for your leniency with his sentencing and give him a second change to right his wrong. I believe in the power of our justice system and the education that will be afforded. With the support of his family and friends, I trust that Jordan will strive to become a positive resource to his community where his love, humility, modesty, and resiliency will spark inspiration.

Sincerely,

Dr. Liza Ortiz

Falliere Blain II
19 Albacon Road
Nanuet, NY 10954


January 5, 2023


Re: Jordan Woodbine


To: The Honorable Judge Cathy Seibel


My name is Falliere Blain II and I am writing this reference letter on the behalf of Jordan Woodbine. I am a former student at Buffalo State College and I am currently attending Rockland Community College in pursuit of my business degree. I have worked at Rockland Boces for several years and I am a freelance photographer as well.

I have known Jordan since the second grade at Fleetwood Elementary School and both graduated from Paramus Catholic High School, and consider him a life-long friend. With that being said, I believe that I can provide you more insight about his moral character.

Jordan Woodbine is, in short, a good person. Jordan is very polite and respectful, any time that he would be around my family he would always give the women a greeting kiss and all the men a handshake, which comes from his positive  upbringing and mannerism from a caribbean household. Jordan has a strong sense of duty, intelligence, compassion, loyalty, and kindness. We went to public school up until our years of high school. In high school he was a student-athlete and became more religious by taking classes and being in the environment of a catholic school. This environment led us to doing plenty religious activities, hours of selfless acts of community service, and attending mass. Jordan grasped a bigger appreciation for what is given in life. Two major times that we helped each other; Jordan had got in an accident and I was the first person he called and I came right away, and another time I left my keys at home and i was stuck in Manhattan(push to start) and he brought my keys to me ASAP. I can recollect countless times that Jordan has been very dependable or supportive, but that's what friends are for. Not every friend can say they see another as a role model. To be humble, to be smart, to be pure, to be dedicated, to be original. Jordan always shows integrity and constantly strives to do the right thing.

It must be difficult for you to make a  decision without knowing the person in front of you.  I hope this letter can give you more of a clear insight on my friend Jordan.


Sincerely,


Falliere Blain II


*Falliere Blain II*

December 28, 2022

Re: *United States vs Woodbine*

Dear Judge Cathy Seibel,

My name is Keñya R. Edmondson, a native of New York who currently resides in Raleigh, NC. I have a BS in Pre-Med Biology and a MS in Industrial Pharmacy, having worked in the Pharmaceutical, Biotech and Gene Therapy industry for over 31 years. I currently serve as the Vice President of Sterile Injectables Operations at Pfizer, Inc. where I oversee manufacturing operations for multiple plants in the network, including over 10,000 colleagues. I am a Board Member of several non-profit organizations, including one that supports young adults who age out of foster care, an active member of a national sorority which focuses on Educational Awareness, International Awareness, Economic Development, and Physical and Mental Health and I am an active church member and community volunteer.

I appreciate an opportunity to share my thoughts about Jordan Woodbine. My family has known the Woodbines for over 25 years. In fact, Keron Woodbine and I were pregnant at the same time, she gave birth to Jordan in March, and I gave birth to my daughter Taylor in June 2000. Our families are very close, we celebrate holidays together, vacation together and our friendship has blossomed into one that resembles family. In fact, Jordan and Taylor have always thought of themselves as siblings and shared similar characteristics as children. They both were introverts, quiet, a bit shy and struggled initially to find their voices. In their afterschool program, they were each other's comfort and Jordan was Taylor's protector to some extent. While Jordan and Taylor went to separate elementary, middle, and high schools due to where we lived, they remained close. I vividly remember a party Taylor went to her senior year in high school, she was uncomfortable because she had gone to the party with friends and didn't know many people there. Jordan shows up and her world was better, and in true Jordan fashion towards her, he ensured she was safe, that she had fun and arrived home safely. Jordan refers to me as auntie Keñya and we would always have chats about his likes, dislikes, what he enjoyed, basketball, what colleges he and Taylor would go too, etc. He was such a loving kid, but I could discipline him easily and he would be responsive to my feedback. Now that little boy later turned into a very tall and determined young man. He was happy to work at Panera Bread for years, earning his own money and later attending Rockland Community College, where he is just shy of an Associates Degree. This is the determined, driven young man I have always known, but I also acknowledge that the years from high school to college and during college are very formidable years for young adults. The transition can be extremely difficult for some, and I believe it was for Jordan. Movement of friends, re-establishing yourself with a new community, addressing insecurities, etc. put him at risk of making poor decisions in my opinion, however, Jordan's foundation is still based on love. His grandmother passed away almost 3 years ago and during the repast following her funeral, Jordan hugged me, held onto me and I was yet again reminded of the genuine, loving, and sweet young man he is, who adored his grandmother and loved on family.

I must admit, hearing of the acts of violence that Jordan was allegedly involved in hurts my heart and by no means reflect the young man I know and love. While I don't condone any of these horrendous acts, I do believe that we all have fallen at a period in our lives where we needed grace, stillness, and reflection to allow for learnings and an opportunity to convert lessons into a brighter future. My petition today Judge Seibel is that you consider the whole person, his potential and not just the man presented before you in this case.

Sincerely,

Kenya R. Edmondson, MS
Mrse02@yahoo.com
845-545-0696